REDMANN, Judge.
From a judgment for $179,000 for longshoreman Luke Bonura, Jr. against Dixie Dredge Company and the insurer of longshoreman superintendent Edward C. Cook in solido, Dixie alone appeals.
Cook’s insurer had third-partied Dixie for contribution but the judgment was silent on that demand. Counsel advise us, at oral argument, that Cook’s insurer has now paid the judgment under an agreement with Bonura that Bonura will defend against this appeal and will refund half if he defeats this appeal and collects half from Dixie. We therefore treat this appeal as one in which Cook’s insurer pursues Bonura’s claim, as by subrogation, to obtain contribution. The real question is thus whether Dixie is liable in contribution to Cook’s insurer, even if both are liable to Bonura. We conclude that Dixie is not liable in contribution towards Cook’s insurer; to the contrary, Dixie would be entitled to full indemnity from Cook’s insurer. For that reason the question of whether Dixie is liable to Bonura need not be decided; instead we amend to expressly deny contribution to-Cook’s insurer.
Dixie built a steél hydraulic dredge in sections, which it shipped by rail from St. Louis to New Orleans for transshipment to an oceangoing vessel. The dredge’s 46-ton center section, 12' wide by 57' long, was not covered by an integral steel deck across its top as other sections were. It had steel decking for perhaps 20 feet at one end, at a level perhaps four feet below the top of the coamings. Much of the dredge’s gear, piping and wiring was located in the undecked remainder, and Dixie erected a temporary cover to protect it from the elements and from intruders. Dixie constructed a wall from near the end of the decking to the top *1267 of the coamings with 4' X 8' sheets of quarter-inch plywood, supported by wooden 2" X 4" bracing erected on four-foot centers. Dixie then covered the undecked remainder with five rows of three sheets each of similar plywood sheets across the 12-foot width at the top of the coamings. These sheets were supported by two-by-fours crossing the 12-foot width at four-foot intervals. Each crosswise two-by-four was in turn supported at its ends.by the coamings and at its center by one vertical two-by-four about 12 feet tall. There appears to have been no lengthwise bracing; eight-foot slats of plywood were attached on top of the plywood sheets along their eight-foot sides more as a cover for the crack between the sheets than as a support for them.
At the request of Cook’s employer, Texla Stevedores, Inc., Dixie sent its foreman, Charles Medley, to New Orleans to instruct Texla on how to rig the center section for lifting because of its unique lack of steel decking. It was Cook, with one or two others, to whom Medley gave instructions and a sketch illustrating the desired rigging. Dixie contemplated that the longshoremen should affix the rigging (already attached to the crane’s block) at the two ends of this center section while standing outside the section at both ends (and on the steel decking at the one end at which the cables had to pass through the coaming), rather than atop the plywood cover, and that a chain fall should attach around the suction pipe, accessible through a hatch (although apparently one sheet of plywood would have had to be removed to allow the chain fall access to the pipe).
Cook removed one corner sheet and three center sheets of plywood from atop the dredge section (presumably to enable the chain fall to reach the suction pipe). The thinness of the plywood and its lack of support (except for crosswise two-by-fours, four feet apart) therefore had to be visible to Cook. Yet instead of spanning the 12-foot width with suitable boards or beams across the coamings, he caused two or three short two-by-sixes (or -eights or -tens) to be placed across the four-foot-wide opening he had created between sheets of quarter-inch plywood, unsupported on its sides, and placed the 300-pound chain fall on those boards. In addition to that weight, the four IV2" steel cables attached to the ends of the dredge section also lay atop the plywood covering, awaiting attachment to the crane’s block. Three longshoremen atop the plywood with the chain fall and cable are shown in a photograph taken from the vessel onto which the dredge was to be loaded. When moments later the accident occurred, Cook and one more longshoreman had joined the other three and the plywood gave way.
Under these circumstances we conclude that Cook or his insurer cannot, even if Bonura could, accuse Dixie of fault in Bonura’s injury on the theory that Dixie created the false appearance of a sturdy plywood floor upon which Dixie should have expected longshoremen to stand and to load their gear.. Whatever appearance of strength may have been created by the plywood covering was dispelled, at least as to Cook, when he removed four sheets of the plywood.
Texla and its superintendent Cook owed to Dixie the proper and workmanlike rigging of the dredge section for lifting. If it be true, as testified by two longshoremen, that rigging could not be accomplished without standing atop the dredge section, Cook owed it to his men to provide a safe place to stand and he knew or should have known that quarter-inch plywood braced crosswise at four-foot intervals was not a safe place for five men to stand with heavy equipment. If it can be said that Dixie also owed to the longshoremen the duty of providing a safe place to stand because Dixie should have known that they had to stand atop the dredge section, it cannot be said that Dixie owed that duty to Cook and Texla after they knew of the flimsiness of the plywood covering. To the contrary, Cook and Texla owed that duty to Dixie as part of their overall contractual duty to move the dredge section from rail car to ship’s hold in a proper and workmanlike manner.
*1268 Cook breached his duty to the longshoremen and to Dixie by placing only two or three boards only six or eight feet long across the four-foot opening between unsupported edges of quarter-inch plywood, rather than a sufficient number of boards 12 or more feet long across the entire 12-foot top of the dredge section, and by ordering the longshoremen atop the self-evidently too-weak plywood.
The judgment appealed from is therefore amended so as to dismiss the third-party demand of Cook’s insurer for contribution from Dixie, so that the judgment appealed from may not be executed against Dixie in Cook’s insurer’s behalf; and this appeal is otherwise dismissed as moot because plaintiff personally no longer has a real interest in the judgment.